IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROCKS-ANNA HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:10cv00292 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Rocks-Anna Hall ("Hall") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Hall argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to give controlling weight to the opinion of her treating physician, Dr. Amy Butler, failing to properly evaluate her complaints of pain and failing to properly evaluate her partial impairments. Hall also argues that the ALJ improperly considered a consultative evaluation ("CE") performed in connection with a previous application for disability. Having reviewed the administrative record and considered the arguments of counsel, the court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**, the Commissioner's Motion for Summary Judgment (Dkt. #12) is **GRANTED**, and Hall's Motion for Summary Judgment (Dkt. #9) is **DENIED**.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security

2

benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Hall was born in 1961 and has a high school education. (Administrative Record, hereinafter "R" at 54, 183.) She lives alone. (R. 64.) She previously worked as a receptionist, secretary/file clerk and dental assistant. (R. 80.) Hall filed an application for benefits on July 14, 2006, claiming disability as of October 14, 2005 based on plantar fasciitis, irritable bowel

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

syndrome, headaches, arthritis, carpel tunnel, tendonitis, bursitis and fibromyalgia. (R. 138, 142, 177.) The Commissioner denied her application for benefits based on a medical records review on October 2, 2006 and this decision was confirmed on reconsideration on January 24, 2007. (R. 91, 100.) An administrative hearing was held on January 11, 2008 before an ALJ. (R. 46-87.) Thereafter, at the request of the ALJ, Hall underwent a mental CE and a supplemental hearing was held on October 9, 2008. (R. 29-45.)

In a decision issued December 19, 2008, the ALJ found that Hall had severe impairments consisting of fibromyalgia, bilateral carpal tunnel syndrome status post release surgery, irritable bowel syndrome, plantar fasciitis, degenerative disc disease, headaches, major depressive disorder, generalized anxiety disorder, and obesity. (R. 17.) Considering these impairments, the ALJ found that Hall retained the RFC to perform light work, except that due to her impairments she can only occasionally crouch or climb ramps or stairs, can never crawl or climb ladders, ropes or scaffolds and must avoid concentrated exposure to temperature extremes and hazards such as dangerous machinery or unprotected heights. (R. 19.) With regard to mental functioning, the ALJ found that Hall had moderate difficulties in social function and with regard to concentration, persistence or pace. (R. 18.) Thus, the light work must accommodate Hall's mental limitations, permitting only simple, easy to learn unskilled work in a stable work environment with few changes and minimal interaction with the public. (R. 19.) Based on this RFC, the ALJ determined that Hall cannot perform her past relevant work. (R. 26.) However, the ALJ further determined that a significant number of jobs exist in the national and regional economies which Hall can perform. (R. 27.) Accordingly, the ALJ concluded that Hall is not disabled under the Act. (R. 27.) The Appeals Council denied Hall's request for review and this

appeal followed. (R. 1-3.) Hall and the Commissioner filed respective motions for summary judgment and the court heard oral argument on May 31, 2011.

## III

Hall argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Amy Butler, failing to properly evaluate her complaints of pain and failing to properly evaluate her partial impairments. Hall also argues that the ALJ improperly considered a consultative evaluation performed in connection with a previous application for disability. Hall's disability claim focuses on fibromyalgia, carpal tunnel syndrome, irritable bowel syndrome, plantar fasciitis, degenerative disc disease, headaches, major depressive disorder, generalized anxiety disorder and obesity.

In June 2003, Dr. William Blaylock, a treating doctor, diagnosed Hall with fibromyalgia, as well as degenerative disc disease, arthritis, probable irritable bowel syndrome and chronic headaches. (R. 249.) The notes from the June 2003 office visit indicated that Hall "has been having pain off and on for the last 14 years." (R. 247.) Dr. Blaylock prescribed medication and advised Hall to exercise, stretch and use moist heat. (R. 249.) Hall treated with Dr. Blaylock until March 2005 when she began seeing Dr. Amy Butler. (R. 356.)

In June and July 2006 visits, Dr. Butler's notes indicated continued problems with fibromyalgia including low energy and pain. (R. 262, 334.) With some exceptions indicating no tenderness to palpation, the majority of Dr. Butler's examinations revealed tenderness to palpation consistent with fibromyalgia. (R. 334, 338, 567, 570, 577, 601.) In October 2006, Dr. Butler filled out a Fibromyalgia Questionnaire opining that Hall could sit only 15 minutes, stand only 15-20 minutes and walk less than one city block without rest or severe pain. (R. 380-81.) Dr. Butler further stated that Hall was incapable of even a low stress job. In November 2007, Dr.

5

Butler noted that Hall's "extremely tense home life is hindering her recovery." (R. 577.) In April 2008, Dr. Butler assessed Hall as having "fibromyalgia and depression – stable." (R. 600-01.)

Dr. Butler also treated Hall's plantar fasciitis and irritable bowel symptoms. In June 2006, Hall complained of pain along the bottom of her feet and on examination Dr. Butler found some tenderness to palpation over the heels, with full range of motion in ankles and toes. (R. 337-38.) Dr. Butler gave Hall stretching exercises to perform. (R. 339.) Following complaints of abdominal pain and diarrhea, Dr. Blaylock diagnosed Hall with irritable bowel syndrome in 2003. (R. 248.) In September 2007, Dr. Butler noted that Hall complained of "a lot of irritable bowel symptoms" and was taking acidophilus. (R. 569.)

In May 2004 Dr. Paul Leibrecht, a treating orthopedist, diagnosed Hall with moderate bilateral carpal tunnel syndrome. (R. 282.) Dr. Leibrecht performed a surgical release procedure on both wrists, with good results. (R. 285.) In July 2004, Dr. Liebrecht wrote, "[Hall] is doing very well" noting that all her numbness and tingling had resolved and she was doing all her normal work activities. (R. 285.) In September 2004, Dr. Liebrecht wrote, "[h]er hands are doing great with the carpal tunnel symptoms, which are gone." (R. 286.) Thereafter, in a June 2005 visit, Hall complained of wrist and elbow pain and Dr. Leibrecht diagnosed bilateral epicondylitis. (R. 286.) However, in March 2006, Hall deferred both injections and surgery indefinitely and the office notes indicated that her pain related to epicondylitis was "somewhat improved." (R. 293.)

Hall has also been treated for depression, with one hospitalization for mental health reasons occurring in October 2007. In April 2005, Hall stated she was "feeling better on Zoloft – not as moody…" and Dr. Butler noted that Hall had a "mildly depressed mood." (R. 276.) In

6

September 2007, Dr. Butler noted that Hall reported "increasing stress with marital problems and trying to deal with the breakup of her marriage, and also relocating." (R. 429.) On October 2, 2007, Hall was admitted to the hospital following an overdose of prescription medication. (R. 441.) She reported feeling better after a few days of hospitalization and participation in counseling sessions. (R. 444.) Hall denied that she had been trying to kill herself and stated that she took the pills to try to relax after a fight with her husband. (R. 446.) On discharge, October 6, 2007, Dr. Asim Rana diagnosed dysthmia, general adjustment disorder, rule out major depressive disorder, recurrent. (R. 444.) Dr. Rana assigned Hall a GAF of 55.[2]

In March 2008, following the first hearing with the ALJ, Hall underwent a mental CE performed by Christopher Carusi, Ph.D. Hall told Dr. Carusi that she lived alone and was capable of completing self-care tasks and managing her finances. She indicated she spends her days taking care of her dog, straightening the house, doing laundry, walking 30 minutes per day, watching television and reading. (R. 586.) She also reported having lunch with a friend approximately once a week. (R. 586.) Dr. Carusi diagnosed Hall with major depressive disorder, recurrent, moderate and assigned her a GAF of 63.[3] (R. 588.) Dr. Carusi completed a Medical Source Statement (Mental) reporting moderate limitations in Hall's ability to understand, remember and carry out complex instructions and ability to make judgments on complex work related decisions. (R. 589.) He also noted moderate limitations in her ability to interact appropriately with the public and respond appropriately to unusual work situations and

---

[2] A GAF in the range of 51 - 60 signifies moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

[3] A GAF in the range of 61 - 70 signifies some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

7

to changes in a routine work setting. (R. 590.) In April 2008, Hall told Dr. Butler that "her depression is okay on the Cymbalta." (R. 600.)

As set out above, Hall's treating physician, Dr. Butler, has opined that Hall is not capable of gainful employment and Hall argues on appeal that the ALJ erred by failing to give controlling weight to Dr. Butler's opinion. A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SSR") 96-2p.

In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

8

In this case, the ALJ rejected Dr. Butler's opinion that Hall could not perform any gainful activity. The ALJ gave "little weight to the questionnaires filled out by Dr. Butler regarding the claimant's functional limitations as a result of claimant's fibromyalgia." (R. 24.) The ALJ wrote that Dr. Butler's opinions regarding Hall's functional limitations were "wholly based upon claimant's own subjective complaints of pain and not corroborated by any objective medical records or medical opinions." (R. 25.) The ALJ emphasized that Dr. Butler noted no disabling limitations in the treatment record, but instead consistently recorded mild objective findings, undermining her opinion that Hall cannot work. (R. 25.) Considering the longitudinal treatment record consisting of generally routine and conservative treatment, the lack of objective findings in Dr. Butler's treatment notes, the opinions of the state agency physicians and Hall's activities of daily living, substantial evidence supports the ALJ in this regard.

In October 2006, Dr. Butler filled out a Fibromyalgia Questionnaire opining that Hall could sit only 15 minutes, stand only 15-20 minutes and walk less than one city block without rest or severe pain. (R. 380-81.) Dr. Butler further indicated that patient must use a cane or other assistive device when engaged in occasional standing or walking. (R. 381.) Dr. Butler also completed a Medical Source Statement (Physical) in October 2006 opining that Hall's postural limitations dictated that she never climb, balance, kneel, crouch, crawl or stoop. (R. 384.) Thereafter, in November 2007, Dr. Butler completed a second Medical Source Statement (Physical) which further restricted Hall's exertional limitations to only occasionally or frequently lifting less than 10 pounds. (R. 424.) However, the administrative record as a whole reflects routine, conservative treatment and does not support the degree of limitation set forth by Dr. Butler or claimed by Hall. In contrast to Dr. Butler's report of her limitations, Hall indicated in her function report dated December 2006 that she does not use a cane or other assistive device.

9

(R. 224.) Further, Hall stated at the January 2008 hearing that she walks for 20 to 30 minutes twice a week. Hall also testified that she was not under any current restrictions by any of her treating doctors. (R. 77.)

It is clear from the record that Hall has not met her burden of establishing that she is disabled. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). During the course of the administrative process, two state agency physicians reviewed Hall's medical records and determined that she retained the RFC to work. On September 29, 2006, Dr. Michael Hartman determined that Hall could perform light exertional work with some postural and environmental limitations. (R. 359-365.) Dr. Robert McGuffin reached the same conclusion on January 23, 2007. (R. 405-410.) Moreover, Dr. Butler's opinions regarding Halls functional limitations are not corroborated by the objective medical record and are "undermined by [Dr. Butler's] consistent findings that the claimant's condition was overall fairly normal, except for some tender points on her shoulders, neck, back, arms and legs." (R. 25, 334, 338, 567, 570, 577, 601.) The ALJ specifically took into account Hall's fibromyalgia, carpal tunnel syndrome, irritable bowel syndrome, plantar fasciitis, degenerative disc disease, headaches, major depressive disorder, generalized anxiety disorder, and obesity in finding she can perform a limited range of simple, easy to learn unskilled light work, with certain postural and environmental limitations, in a stable work environment with minimal interaction with the public.[4] The record does not support Dr. Butler's opinion that Hall is unable to work; instead substantial evidence supports the ALJ's decision.

Hall also argues on appeal that the ALJ improperly discounted her complaints of pain. Hall testified that due to her physical impairments "…I can't stand up for very long and I can't

---

[4] The ALJ gave Hall "the benefit of the doubt" that her irritable bowel syndrome, degenerative disc disease and plantar fasciitis were severe impairments.

10

sit down. I can't lift things with my wrists and my fingers…." (R. 76.) She further testified she experiences pain in her shoulders, elbows, wrists, fingers, neck, back, hips, knees and feet and "never [has] a day that [she is] pain free." (R. 68.) Hall asserts that there is "clear and sufficient evidence in the record to establish (…) [her] pain. (Dkt. 9, p. 1.) Without pointing to specific records providing objective medical evidence corroborating her complaints, Hall states her "medical records clearly exhibit medical findings of fibromyalgia, post-bilateral carpal tunnel syndrome, degenerative disc disease, plantar fascitis [sic], irritable bowel syndrome, tennis elbow, headaches and depression (…) [which] would clearly cause the pain and physical limitations (…) presented to the Commissioner." (Dkt. 9, p. 8.) The Commissioner argues that the bulk of the medical and vocational evidence in the record supports the ALJ's credibility and disability determinations.

The ALJ based his determination that Hall was not fully credible on the degree of medical treatment required, discrepancies between claimant's assertions and information contained in the documentary reports, findings made on examination and claimant's activities of daily living. (R. 21-25.) The ALJ wrote that "no treating physician and/or psychiatrist has recommended anything other than conservative treatment" and the "medications, recommendations or other procedures prescribed…have been relatively effective in controlling her alleged impairments." (R. 25-26.) The ALJ further stated that Hall never reported to her treating physician that her fibromyalgia was as severe as she now alleges and that her other alleged physical impairments are not corroborated by consistent longitudinal evidence, appearing instead as "various and inconsistent medical problems…." (R. 25.) Finally, the ALJ determined that Hall's activities of daily living are not consistent with a disability level impairment. (R. 25.) In her January 2008 hearing, Hall testified that she does some laundry and grocery shopping

11

and she is able to drive. (R. 65.) She also walks a couple times a week for 20-30 minutes. (R. 66.) In April 2008, Hall reported to Dr. Carusi that she spent her days, taking care of her dog and her house, doing laundry, walking 30 minutes per day and watching television and that she had lunch with a friend approximately once a week. (R. 586.)

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d at 638. Accordingly, the ALJ is not required to accept Hall's subjective allegation that she is disabled because of her pain, but rather must determine, through an examination of the objective medical record, whether she has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d at 592-93 (stating that objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers.") Then, the ALJ must determine whether Hall's statements about her symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not to interfere with those determinations. See Hatcher v. Sec'y of Health and Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) As noted above, substantial evidence supports the ALJ's conclusion that the functional limitations Hall claims are not supported by her medical records.

12

Hall further argues that the ALJ erred by not placing more weight on her partial impairments, including the impact of irritable bowel syndrome, post bilateral carpel tunnel release surgery, tennis elbow, plantar fasciitis, headaches and degenerative disc disease. Hall states that the combination of her impairments prevents gainful employment and that each partial impairment "increases the symptology [sic] of fibromyalgia." (Dkt. 9, p. 7.) The Commissioner counters that the ALJ appropriately weighed all of Hall's impairment and argues that Hall's conclusory statement, with no citation to the record, that "virtually every medical record corroborates [her] impairment and extent of limitations caused by these conditions" is inadequate. (Dkt. 13, p. 9; Dkt. 9, p. 7.)

The ALJ's disability determination properly considered each of Hall's impairments and is supported by substantial evidence. In his opinion, the ALJ noted that Hall was diagnosed on several different occasions with irritable bowel syndrome and that the condition appears to have been controlled by the appropriate medication. (R. 22.) In September 2007, Dr. Butler noted she took acidophilus to help with her irritable bowel symptoms. (R. 569.) In fact, the ALJ gives Hall "the benefit of the doubt" and considers her irritable bowel symptoms a "severe" impairment, even though it does not appear to rise to that level. (R. 22.) The ALJ's opinion also considered Hall's carpal tunnel syndrome, noting she underwent a surgical release procedure on both wrists, with a good outcome.[5] (R. 22.) Likewise, the ALJ placed appropriate weight on Hall's diagnosis of epicondylitis / tennis elbow. March 2006 office notes indicate that her pain related to epicondylitis is "somewhat improved" and she deferred both injections and surgery indefinitely. (R. 293.) The ALJ properly considered Hall diagnosis of plantar fasciitis and degenerative disc disease, writing that though these do not appear to be severe impairments, he will give Hall "the benefit of the doubt that her impairments are severe." (R. 22.) An x-ray of

---

[5] In fact, in September 2004, Dr. Liebrecht wrote that Hall's carpal tunnel symptoms were gone. (R. 286.)

Hall's lumbar spine in September 2006 was negative, showing well maintained vertebral body heights, disc spaces and articulating facets. (R. 358.) Finally, the ALJ gave proper weight to Hall's headaches. Hall testified that she suffered cluster headaches two or three times per week; however, this claim is not supported by her medical records. Hall had a neurological examination in March 2004 with normal results and the neurologist advised using massage, heat and motion to decrease her headaches. (R. 280-81.)

The ALJ also properly considered Hall's mental impairment. Following the first hearing in January 2008, the ALJ requested a mental CE. The ALJ indicated in his opinion that he concurred with the consultative examiner's finding that Hall had moderate restrictions in social functioning, as well as concentration, persistence and pace. (R. 18.) In consideration of this mental limitation, the ALJ restricted Hall to simple, easy to learn unskilled work in a stable work environment with few changes and minimal interaction with the public. (R. 19.) Thus, the record does not support Hall's argument that the ALJ did not properly weigh her impairments.

Finally, Hall states that the ALJ erred by considering a CE performed in connection with Hall's prior application for disability benefits, which she voluntarily dismissed. Hall argues that this CE, performed by Dr. Humphries, was outside the relevant time period and not applicable to the current case. The ALJ's opinion contains two references to Dr. Humphries' CE. The ALJ writes:

> In connection with her prior application, the claimant underwent an independent consultative medical examination on December 20, 2004, by Dr. William Humphries. Based on his findings, Dr. Humphries opined that the claimant could perform a range of sendentary/light duty work. (R. 21.)
>
> …
>
> In Dr. Humphries' December 2004 consultative examination, the claimant's mental status is described as within normal limits. (…) The State Agency reviewing psychologist also

14

determined no "severe" mental impairment in connection with the prior application….
(R. 23.)

While the ALJ's opinion does mention Dr. Humphries' CE, it contains no indication that the ALJ relied on this CE in making his disability determination. In fact, the ALJ found that Hall had "severe" mental impairments consisting of major depressive disorder and generalized anxiety disorder, in direct contrast to Dr. Humphries' opinion describing claimant's mental status as "within normal limits." (R. 23.) Moreover, the ALJ specifically states that he gave "significant weight" to the opinion evidence of Dr. Kovacich and state agency physicians Hartman and McGuffin regarding Hall's physical limitations, with no mention of Dr. Humphries. (R. 24.)[6]

For these reasons, the Commissioner's decision is **AFFIRMED**.

## V

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In affirming the final decision of the Commissioner, the undersigned does not suggest that Hall is free from all infirmity. Careful review of the medical records compels the conclusion that Hall has not met her burden of establishing that she is totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Hall's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. For these reasons the

---

[6] The ALJ references the Physical Residual Functional Capacity Assessments performed by Drs. Hartman and McGuffin by exhibit number, which clearly indicates that he is referring to and relying on these state agency physicians. State agency physicians determined Hall was capable of performing a range of light exertional work, with some limitations (Exhibits B6F and B9F).

Dr. Kovacich performed a Disability Determination Examination in September 2006, noting fibromyalgia, acid reflux, irritable bowel syndrome and depression. (R. 437-38.)

15

Commissioner's Motion for Summary Judgment (Dkt. #12) is **GRANTED**, and Hall's Motion for Summary Judgment (Dkt. #9) is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: August 16, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge